**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

STEPHEN R. HERBEL, ET AL.                           CIVIL ACTION NO. 20-0563

VERSUS                                              JUDGE S. MAURICE HICKS, JR.

ALLEN, GIBBS, & HOULIK, L.C.                        MAGISTRATE JUDGE HORNSBY

**MEMORANDUM ORDER**

Before the Court is Defendant Allen, Gibbs, & Houlik, L.C.'s ("AGH") Motion to Strike Plaintiffs' Affidavits and for Sanctions.  See Record Document 90.  Plaintiffs Stephen R. Herbel, B. Craig Webb, and Jerry Webb ("Plaintiffs") opposed the motion.  See Record Document 97.  AGH replied.  See Record Document 104.  For the reasons set forth below, AGH's Motion to Strike is **DENIED**.

This case belongs to a family of lawsuits concerning David deBerardinis' ("deBerardinis") fraudulent Ponzi scheme.  In 2014, deBerardinis' business entity, FR III Funding ("FR III"), secured $17,500,000 in financing from Texas-based Plains Capital Bank ("PCB"), guaranteed by Plaintiffs.  The loan, guaranteed by Plaintiffs, was conditioned on an independent audit performed by CPA firm AGH.  After PCB increased the loan to $29,500,000 in early 2015, AGH prepared a second independent audit report as required by the credit agreement.  In 2016, the United States Secret Service revealed deBerardinis' entire operation to be fraudulent.  deBeraradinis is now serving time in federal prison for his crimes.

Plaintiffs allege three causes of action against AGH:   (1) negligent misrepresentation; (2) negligence; and (3) aiding and abetting.  Plaintiffs generally allege that AGH misrepresented the risk of fraud by ignoring internal concerns about FR III's

involvement in the audit and failing to independently verify operations.  AGH has now filed a motion for summary judgment seeking dismissal of all of Plaintiffs' claims.  Plaintiffs opposed such motion and each submitted an affidavit in support of their position that disputes of fact remain and summary judgment is not appropriate.  AGH seeks to strike such affidavits pursuant to the sham-affidavit doctrine.

When deciding a motion for summary judgment, a district court must consider all the evidence before it.  See Seigler v. Wal-Mart Stores Texas, L.L.C., 30 F.4th 472, 477 (5th Cir. 2022), citing Kennett-Murray Corp. v. Bone, 622 F.2d 887, 893 (5th Cir. 1980).  The court cannot disregard an affidavit merely because it conflicts to some degree with an earlier deposition.  See id.  Yet, the "sham-affidavit doctrine" is an exception to this general rule.  Seigler, 30 F.4th at 477, citing S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996).  Pursuant to this rule, the court may not "allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony."  Id.  The rationale behind the rule is "that a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment."  Seigler, 30 F.4th at 477, citing Doe ex rel. Doe v. Dallas Indep. Sch. Dist., 220 F.3d 380, 386 (5th Cir. 2000).

"However, not every discrepancy in an affidavit justifies disregarding it when evaluating summary judgment evidence."  Seigler, 30 F.4th at 477, citing Winzer v. Kaufman Cty., 916 F.3d 464, 472 (5th Cir. 2019).  The bar for applying the sham-affidavit rule is a high one and generally "requiring affidavit testimony that is 'inherently inconsistent' with prior testimony."  Id.; see also Clark v. Resistoflex Co., A Div. of Unidynamics Corp., 854 F.2d 762, 767 (5th Cir. 1988) (characterizing the sham-affidavit

doctrine as "denying credence to an affidavit so markedly inconsistent with the affiant's prior deposition as to constitute an obvious sham").  "An affidavit that supplements rather than contradicts prior deposition testimony falls outside the doctrine's ambit."  Seigler, 30 F.4th at 477, quoting S.W.S. Erectors, Inc., 72 F.3d at 496.  Stated differently, the rule is inapplicable "when discrepancies between an affidavit and other testimony can be reconciled such that the statements are not inherently inconsistent."  Seigler, 30 F.4th at 477, citing Winzer, 916 F.3d at 472–73.  Additionally, because of the jury's role in resolving questions of credibility, a district court should not disallow the content of an affidavit even if it varies from statements made earlier.  See Seigler, 30 F.4th at 477, citing Kennett-Murray, 622 F.2d at 893.

Here, AGH argues that the affidavits/declarations of Jerry Webb, Stephen Herbel, and Craig Webb are self-serving; inconsistent with and contradicted by prior deposition testimony and prior affidavits; and are provided solely to create genuine issues of material fact in response to AGH's Motion for Summary Judgment.  Specifically, AGH argues that "through affidavits executed on the same day that their opposition to AGH's motion for summary judgment was filed, Plaintiffs, **without any explanation**, have changed their testimony and now state under oath that they indeed relied on the AGH audits."  Record Document 90-1 at 5 (emphasis in original).

This Court does not believe the sham-affidavit doctrine is applicable to the affidavits of Jerry Webb or Stephen Herbel, as neither were deposed in connection with the instant matter.  See Vest Safety Med. Servs., LLC v. Arbor Env't, LLC, No. 4:20-CV-0812, 2022 WL 2812195, at *2 (S.D. Tex. June 17, 2022), report and recommendation adopted, No. 4:20-CV-0812, 2022 WL 2806544 (S.D. Tex. July 18, 2022) (court declined

to apply sham-affidavit doctrine when affiant was not deposed and had not given any prior testimony in the case).  While it is true that both men were extensively deposed in May 2018 in connection with the Dallas PCB litigation,  AGH was not a party to such litigation and was not present at those depositions.  PCB's counsel did not ask Plaintiffs about AGH and PCB never asked Plaintiffs about the AGH audits or their reliance on those audits.  The Dallas PCB litigation was focused on the enforceability of the guaranties, not the AGH audits.

The affidavit of Craig Webb (Record Document 84-4 at 611-619) requires more attention.  In his affidavit, Craig Webb specifically addressed portions of his deposition testimony that he was clarifying or explaining.  See Record Document 84-at 614 (¶¶ 8-9) and 618 (¶¶ 20-21).  Thus, pursuant to the sham-affidavit rule, Craig Webb has at a minimum provided explanation for portions of his affidavit that may impeach prior sworn testimony.  One discrepancy AGH focuses on surrounds whether Craig Webb received a copy of the audits.  See Record Document 90-1 at 14-15.  In his deposition in this matter, Craig Webb stated, "Well, on the 2014 audit, I mean, I – I saw it.  And – and – and I think we got a copy – or I think I got a copy of it, but I'm not sure whether I got a copy or not." Record Document 71-5 at 19.  As to the 2015 audit, he stated, "On the 2015 [audit], I saw it.  And it's the same.  You know, we probably got a copy, but, you know, I don't remember getting the copy.  I remember looking at it with either David [DeBerardinis] and on that one maybe Todd [Muslow] was there – Muslow was there, as well."  Id.  Now, in his affidavit, Craig Webb states, "I personally saw and reviewed the 2014 Audit . . . .  AGH knew I and the other Plaintiffs would be receiving and relying on the Audit."  Record Document 84-4 at 615.  He also attests that he "personally saw and reviewed the 2015

Audit." Id. at 615.  According to AGH, "where in CW's original testimony, the audits were so unimportant as to not warrant keeping a copy, now, CW alleges they were the crux of the basis for their decisions to sign the guaranties."  Record Document 90-1 at 15.

A review of the record as a whole leads this Court to the conclusion that the alleged discrepancies in Craig Webb's prior deposition testimony and his current affidavit present no contradiction or inconsistency that would justify application of the sham-affidavit doctrine.  While any discrepancies between Craig Webb's deposition and affidavit may call his credibility into question, this Court does not think they rise to the level of a contradiction or an inherent inconsistency, because the testimony can be reconciled.  See Seigler, 30 F.4th at 477, citing Winzer, 916 F.3d at 472–73.  AGH's position that Craig Webb's deposition testimony was conveniently not as detailed and specific as his declaration "is not the type of factual conflict that warrants exclusion under the sham-affidavit rule."  Vest Safety Med. Servs., LLC, 2022 WL 2812195, at *2.  For instance, Craig Webb's testimony about the audits – whether he got a copy of the audits or simply looked at the audits without keeping a copy – is not mutually exclusive, nor is it necessarily contradictory.  In other words, it is possible that he personally saw and reviewed the audits without actually keeping a copy of them.  If such testimony is material in this case, then the proper course is to allow a jury to evaluate the testimony's credibility.  In sum, Craig Webb's affidavit testimony did not inherently contradict his deposition testimony and this Court declines to apply the sham-affidavit rule.[1]

---

[1]Because this Court has found Plaintiffs' affidavits do not violate the sham-affidavit doctrine, AGH's request for Rule 56(h) sanctions requires no analysis and will be denied.

For the foregoing reasons, AGH's Motion to Strike Plaintiffs' Affidavits and for Sanctions (Record Document 90) is hereby **DENIED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana on this 27th day of March, 2024.

_____
United States District Judge