UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| STEPHEN R. HERBEL, ET AL. | CIVIL ACTION NO. 20-0563 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| ALLEN, GIBBS, & HOULIK, L.C. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

During the April 2, 2024 pretrial conference, the Court ordered focused briefing on the choice of law issue. <u>See</u> Record Document 119 at 2. Such briefs have now been filed (Record Documents 120, 122, 123, 124, 125, 126, and 127) and the Court makes the following ruling as to the state substantive law applicable to this matter.

This case belongs to a family of lawsuits concerning David deBerardinis' ("deBerardinis") fraudulent Ponzi scheme. In 2014, deBerardinis' business entity, FR III Funding ("FR III"), secured $17,500,000 in financing from Texas-based Plains Capital Bank ("PCB"), guaranteed by Plaintiffs. The loan, guaranteed by Plaintiffs Stephen Herbel, B. Craig Webb, and Jerry Webb, was conditioned on an independent audit performed by CPA firm Allen, Gibbs, & Houlik ("AGH"). After PCB increased the loan to $29,500,000 in early 2015, AGH prepared a second independent audit report as required by the credit agreement. In 2016, the United States Secret Service revealed deBerardinis' entire operation to be fraudulent. deBeraradinis is now serving time in federal prison for his crimes.

Plaintiffs allege three causes of action against AGH: (1) negligent misrepresentation; (2) negligence; and (3) aiding and abetting. All of their claims sound in tort. Plaintiffs generally allege that AGH misrepresented the risk of fraud by ignoring

internal concerns about FR III's involvement in the audit and failing to independently verify operations. More specifically, Plaintiffs contend that AGH performed the audits knowing that Plaintiffs were intending to and did rely on them in connection with deciding whether or not to sign the multi-million dollar PCB loans.

In previous rulings, this Court held that Texas choice of law provisions apply to this matter. See Record Documents 35, 117. Pursuant to Texas choice of law rules, the party urging application of another state's substantive law must furnish the Court with sufficient information to establish that the law of another state applies. See Janvey v. Alguire, 846 F. Supp. 2d 662, 671 (N.D. Tex. 2011). Additionally, failure to provide adequate proof as to choice of law leads to a presumption that the law of the foreign jurisdiction is identical to the law of Texas, thereby negating the need for a decision as to which state's laws govern. See id.

Texas courts apply the American Law Institute Restatement's "most significant relationship test" for all choice of law cases except those contract cases in which the parties have agreed to a valid choice of law clause. Spence v. Glock, Ges.m.b.H., 227 F.3d 308, 311 (5th Cir. 2000).[1] Section 6 of the ALI Restatement (Second) of Conflict of Laws sets forth general principles that inform a choice of law determination:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

---

[1] AGH argues that the law of Kansas should be applied to this matter because the engagement letter between AGH and FR III calls for the use of Kansas law. Conversely, Plaintiffs note that their claims are grounded in tort. They are not suing AGH for breach of contract. Additionally, they are not parties to the contract upon which AGH relies. Thus, Plaintiffs submit – and the Court agrees – that the contract between AGH and FR III is not critical to the determination of choice of law as to the instant lawsuit between Plaintiffs and AGH.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,

    (e) the basic policies underlying the particular field of law,

    (f) certainty, predictability and uniformity of result, and

    (g) ease in the determination and application of the law to be applied.

See id. at 311-12. Later sections of the Restatement specifically address choice of law analysis for a variety of issues, including tort. Section 145 concerns choice of law for issues in tort and states that:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

    (a) the place where the injury occurred,

    (b) the place where the conduct causing the injury occurred,

    (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

    (d) the place where the relationship, if any, between the parties is centered.

    These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Id. at 312.  Sections 6 and 145 are to be read together.  Courts should evaluate these contacts for their quality, not their quantity.  See id.; see also Stevenson v. Ford Motor Co., 608 S.W.3d 109, 118 (Tex. App. 2020) ("[A]pplication of the 'most significant relationship' test does not turn on the number of contacts with a state but on the qualitative nature of those contacts.").

AGH seeks application of Kansas substantive law to the instant matter because the engagement letter between AGH and FR III calls for the use of Kansas law and Kansas has the most significant relationship to the facts of this case.  While AGH cites to the Restatement's "most significant relationship" test, it argues that Section 187 for contracts controls.  Other key factors cited by AGH include that the audits were drafted in Kansas and nearly all of the substantive work was done in Kansas by a Kansas company.  AGH maintains that both parties to the audits were aware of and knowingly agreed to the application of Kansas law, thereby rendering it a justified expectation for both AGH and FR III.  AGH submits that Texas has no significant relationship with this matter because AGH only performed "transient work [in Texas] that it apparently no longer performs." Record Document 124 at 3.

Plaintiffs seek the application of Texas substantive law to the instant matter, noting that all events giving rise to this lawsuit began when deBerardinis convinced a Texas bank, PCB, to loan him money.  PCB imposed two conditions upon the loan(s) – that Plaintiffs personally guarantee the loan(s) and deBerardinis had to provide audited financials.  At the time deBerardinis hired AGH to perform the audits, it was licensed by the Texas State Board of Accountancy.  Plaintiffs argue that Texas does have an interest in regulating AGH's, a Texas registered accounting firm at all times relevant, conduct in

performing an audit solely in furtherance of a Texas loan with guaranties governed by Texas law that were subject to litigation in Texas state court.

Here, the Court has reviewed and weighed the 11 factors set forth in Section 6 and 145 of the Restatement and finds the qualitative nature of the contacts with Texas support the application of Texas substantive law. There is more of a significant relationship with Texas than Kansas and sufficient reason for Texas substantive law to govern this matter. The injuries and damages alleged by Plaintiffs occurred primarily in Texas as that is where Dallas-based PCB sued Plaintiffs in state court. In fact, this Court noted in a previous ruling that "Plaintiffs' legal fees, costs, and expenses [from the Texas state court litigation] are of significant importance, as they appear to form the mainstay of their theory of damages." Record Document 116 at 6. It is this Court's belief that Texas is central to the deBerardinis scam, Plaintiffs' injuries, and the alleged failures on the part of AGH. Texas is the place where AGH and Plaintiffs share a connection to deBerardinis. Moreover, at the time AGH performed the audits, it was licensed by the Texas State Board of Accountancy. AGH chose to engage with deBerardinis knowing that the Dallas-based PCB loans – of which the Plaintiffs were guarantors – was at the center of the transaction. Plaintiffs' expectations that AGH would perform the audits in a manner consistent with Texas law were not unreasonable.

For the foregoing reasons, this Court finds that the most significant relationship test under Texas choice of law requires application of Texas substantive law to the instant matter. Thus, AGH's Motion to Apply Kansas Law (Record Document 120) is **DENIED** and Texas substantive law applies to this case.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana on this 17th day of June, 2024.

                                                                              _____
                                                                              United States District Judge